# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BECKY A. SHEPHERD,

      Plaintiff,

                                                  Civil Action 2:18-cv-417
                                                  Chief Judge Algenon L. Marbley
      v.                                      Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff, Becky A. Shepherd ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 7). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration.

## I. BACKGROUND

Plaintiff applied for disability benefits on July 14, 2014, alleging disability since February 1, 2014. On March 2, 2017, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Nickki Hall (the "ALJ"). (R. at 58-96.) At the hearing, Plaintiff, represented by counsel, appeared and testified. (*Id.* at 28-59.) Vocational Expert Linda Dezack (the "VE"), also testified at the administrative hearing. (*Id.* at 59-65.)

On April 25, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 8-27.) The ALJ noted that Plaintiff met the insured status requirements through December 31, 2019. (*Id.* at 13.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since February 1, 2014, the alleged onset date. (*Id.*) The ALJ found that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff has the severe impairments of bipolar disorder, panic disorder and anxiety disorder. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) After step three of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work should be limited to simple, routine tasks, in occupations with an SVP or 2 or lower, performed in a low stress setting, which is defined as having no fast paced production requirements, such as fast paced assembly line work or piece mill quotas, no greater than occasional changes in work routine or work setting, and which requires no greater than occasional simple work related decision-making. Work should not require greater than occasional face-to-face interaction with supervisors or coworkers and should not require face-to-face customer service type interaction with the general public as a requirement of the job. Finally, work should not require exposure to hazards, such as moving plant machinery and unprotected heights.

(*Id.* at 16.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. The ALJ also recognized that Plaintiff was a younger individual at 45 years old at the time of the hearing with a high school education. The ALJ ultimately determined that, considering her age, education, work experience and his RFC, Plaintiff was capable of performing other work that exists in significant numbers in the national economy. (*Id.* at 21.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 22.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review.

## II. PLAINTIF'S HEARING TESTIMONY

Plaintiff testified that she was 43 years old at the time of the hearing. She indicated that she was married and had grown children. (R. at 34.) Plaintiff averred that she drove to doctor's appointments once or twice a month. (*Id*.) She indicated that she had two years of college education and had vocational training as a pipefitter. (R. at 36-37.)

Plaintiff testified that she realized she was disabled when, after being laid off and called back, she could not return to work because "she couldn't get [herself] out of the house. The panic attacks were so bad." (R. at 39.) She had previously worked as a plumber and pipefitter, and a supervising plumber and supervising pipefitter. (R. at 40.)

Plaintiff explained that she has trouble leaving the house. (R. at 43.) She represented that she had panic attacks and anxiety attacks, and that it takes hours for her to leave the house. (*Id*.) Plaintiff testified that she had seen some improvement with her treatment with Drs. Nica and Rush particularly compared to when she was suicidal. (R. at 45.) She indicated that when she has a panic attack, which occur a couple of times a week and last between 10 and 15 minutes each, she rolls up in a ball and shakes, after which she has to sleep. (R. at 46.)

Plaintiff stated that medications and treatment had helped her depression. (R. at 48.) She also stated that if she takes Klonopin, there have been times she's been able to go to the grocery store, but about a third of the time, she will leave the grocery cart in the aisle and just leave because she "can't take it." (R. at 49.) She testified that she would interact with her family daily but had no interaction with friends. (R. at 53.) Plaintiff explained that in advance of leaving the house, she usually starts two to three house before trying to get out, takes a double dose of Klonopin to calm down, and has to constantly keep checking the fireplace and doors. (R. at 56.)

4

She indicated that it usually takes about ten tries to get out to the car because she keeps coming back to check the fireplace and doors. (*Id.*)

## III.  MEDICAL RECORDS

### A.  Consultive Examination

James Spindler, M.S., examined and evaluated Plaintiff on November 18, 2014, at the request of the Social Security Administration. (R. at 409.) Mr. Spindler opined that it was unlikely that Plaintiff could sustain a work pace and maintain a level of attention and concentration that would be sufficient for most jobs, that it was unlikely that Plaintiff would respond appropriately to supervision and coworkers, and finally, that Plaintiff would unlikely respond appropriately to routine work pressures. (R. at 414-15.)

### B.  Hillcrest Behavioral Health Services

Plaintiff received her mental health treatment at Hillcrest Behavioral Health Services. She was primarily treated by Dr. Barbara Rush, Ph.D., and Dr. Sorin Nica, M.D.

#### 1.  Dr. Sorin Nica, M.D.

Dr. Nica first completed a medical source statement on July 18, 2014. (R. at 296.) At that time, Dr. Nica indicated that he treated Plaintiff every month, or more often if needed. (*Id.*). Dr. Nica reported symptoms such as sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, psychomotor agitation, difficulty thinking or concentrating, manic symptoms, and generalized persistent anxiety. (*Id.*) Dr. Nica explained that Plaintiff responded poorly to treatment. (R. at 297.) Dr. Nica opined that Plaintiff retained no ability to maintain regular attendance or be punctual; and was seriously limited in her ability to remember work-like procedures, understand and remember very short and simple instructions, maintain attention and

5

concentration, sustain an ordinary routine without supervision, work in coordination with others, and make simple decision. (R. at 298.) Dr. Nica opined that Plaintiff also retained no useful ability to complete a normal workday or week, work at a consistent pace, and deal with normal stressors. (R. at 299.) Finally, Dr. Nica opined that Plaintiff was also seriously limited in her ability to ask simple questions, get along wither others, respond appropriately to changes, and travel in unfamiliar places. (*Id*.)

### 2. Dr. Barbara Rush, Ph.D.

Dr. Rush also first completed a medical source statement on July 18, 2014 and reported several of the same symptoms as Dr. Nica had noted. (R. at 302.) Dr. Rush indicated that she treated Plaintiff roughly every other week beginning in May of 2014. (*Id.*) Dr. Rush reported several symptoms such as sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, psychomotor agitation, difficulty thinking or concentrating, social withdrawal, manic syndrome, and generalized persistent anxiety. (*Id*.) Dr. Rush provided clinical findings such as difficult focusing, frequent panic attacks, and tense and avoidant behavior. (R. at 303.) Dr. Rush opined that Plaintiff would miss work more than 3 times a month due to her conditions; found that she retained no useful ability to remember work-like instructions, maintain attention for two-hour segments, maintain regular attendance, or work in coordination with others; and found that Plaintiff was seriously limited in her ability to sustain an ordinary routine. (R. at 304.) Dr. Rush also opined that Plaintiff retained no useful ability to complete a normal workday, get along with coworkers, respond appropriately to changes, or deal with normal work stress. (R. at 305.)

Dr. Rush completed a daily activities questionnaire dated September 9, 2014. (R. at 358.) Dr. Rush noted that Plaintiff only interacted with immediate family with whom she lived and did

not interact with friends. (R. at 357.) Dr. Rush also noted that Plaintiff had a lot of difficulty adjusting to new job sites, had experienced panic attacks while at work, and reported frequent panic attacks with social anxiety and fatigue. (*Id.*) Dr. Rush noted that Plaintiff was typically unable to shop unless accompanied by someone due to her anxiety, required assistance from her spouse or daughter to accomplish various daily activities, and reported that Plaintiff was compliant with her treatment. (R. at 358.)

Dr. Rush completed another medical source statement and activities questionnaire on March 4, 2015. (R. at 455-61.) With regards to the activity's questionnaire, Dr. Rush included several of the same comments such as her tendency to restrict relationships to immediate family members due to her social anxiety, and her difficulty getting along with others at past work sites. (R. at 455.) Dr. Rush also again noted that Plaintiff required assistance for her activities of daily living and accompaniment when shopping. (R. at 456.) In the mental status questionnaire, Dr. Rush noted that Plaintiff had a blunted affect, with low energy, a sad mood, a tearful appearance. (R. at 459.) Dr. Rush opined that Plaintiff was easily distracted, had difficulty staying on task, experienced difficulty with large crowds, avoids social situations, has significant problems to adapting to novel situations, and opined that Plaintiff was unable to adapt to a new job setting. (R. at 460.)

Dr. Rush wrote a letter dated January 9, 2017, in which she indicated that her mental health questionnaire dated July 18, 2014 had only few changes, described Plaintiff as "less driven," and reported that Plaintiff was still impaired by her anxiety and unstable mood. (R. at 463.)

### 3. Unsigned Mental Status Questionnaire

The record also contains a mental status questionnaire from Hillcrest Behavioral that either Dr. Rush or Dr. Nica wrote during the time period of May 2, 2014 through September 9, 2014. (R. at 352.) The doctor describes Plaintiff as having a flat affect, episodes of anger outbursts, tearful appearance, and driven behavior. (*Id.*) The doctor further reports that Plaintiff was experiencing frequent panic attacks, restricting mobility, and severe compulsive behavior. (*Id.*) With respect to Plaintiff's cognitive functioning, the questionnaire reports impaired concentration, distractibility, history of a learning disorder, and an attentional disorder. (*Id.*) The questionnaire indicates that Plaintiff's ability to sustain concentration was "problematic" as she would exhaust herself, as she has difficulty stopping or resting when attempting a task. (R. at 353.) In addition, she was described as shy and introverted with social anxiety and a panic disorder. The doctor concluded the Plaintiff was unable to work due to her inability to adapt to new locations, and people. (*Id.*)

### C. State Agency Review

At the initial level, the state agency psychologist determined that Dr. Rush's September 9, 2014 evaluation was entitled to "great" weight. (R. at 76.) The state agency psychologist also gave "great" weight to Dr. Spindler's opinions, because they were consistent with the totality of the evidence. (R. at 77.) At the reconsideration level, however, the state agency psychologist determined that the same evaluation completed by Dr. Rush on September 9, 2014 was now entitled to lesser weight because her opinions were an overestimate of Plaintiff's limitations and that Dr. Spindler's opinions were now inconsistent with the record. (R. at 93.)

8

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

In her Statement of Errors, Plaintiff raises one contention of error related to the manner in which the ALJ weighed the opinions of her treating physicians and the opinions of the state agency reviewing physicians. She maintains that the ALJ's decision should be reversed in that the mental RFC is not supported by substantial evidence because the ALJ failed to provide good reasons for rejecting the treating source opinions; failed properly to evaluate a set of opinions from her treating source doctor; and improperly relied on the state agency psychologist's opinions. The Court agrees that the ALJ failed properly to evaluate all the mental health opinion evidence of record.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

11

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ analyzed Plaintiff's treating physicians' opinions as follows:

> Dr. Rush, the claimant's treating psychologist, completed assessments regarding the claimant's functioning or her ability to perform work-related activities in July 2014, September 2014, March 2015 and January 2017. The Administrative Law Judge has considered the opinions of Dr. Rush, but has given them little weight in this decision as they are not in line with the remainder of the record and appear to be somewhat skewed.
>
> Dr. Rush stated in January 2017 that the claimant's condition showed little improvement. In contrast, her appointments were less frequent and Dr. Rush observed that some of her attacks were more manageable. Further, Dr. Rush's opinions were inconsistent. Although Dr. Rush described the claimant's panic attacks as "frequent" and unpredictable, she noted that the claimant had only experienced one since her last appointment. Dr. Rush stated that the claimant was also "less driven" but did not explain what that meant. Dr. Rush lacks program knowledge and her opinions were internally inconsistent.

> Dr. Nica completed an assessment of the claimant's ability to perform work-related activities in July 2014. The undersigned has considered Dr. Nica's opinions but has given them only partial weight in this decision, as he lacks program knowledge and they are not supported with an explanation. Dr. Nica referred the reader to his notes, but his notes were not consistent with a totally disabling level of severity. Further, Dr. Nica's opinions were made very early in the disability process, prior to the confirmation that the claimant's medication had caused an exacerbation of her symptoms.
>
> A medical provider from Hillcrest Behavioral Health Services completed a questionnaire regarding the mental status of the claimant in September 2014. It is unclear whether Dr. Nica or Dr. Rush wrote this, but to the extent that it is an opinion that the claimant would be unable to adapt to changes in work location or people, the undersigned gives it little weight, and then only to the extent that the assertion was supported by the overall record.

(R. at 20 (citations omitted).)

As set forth fully above, when evaluating Dr. Rush's opinions, the ALJ determined that the opinions were only entitled to "little" weight. (R. at 20.) The ALJ asserted that Dr. Rush's opinions were inconsistent with the rest of the record and that her opinions were "somewhat skewed." (*Id*.) The ALJ described the record as containing evidence of improvement in Plaintiff's mental condition and faulted Dr. Rush because she lacked "program knowledge." (*Id*.) When evaluating Dr. Nica's opinions, the ALJ determined that his findings were only entitled to "partial" weight. (*Id*.) The ALJ again discounted Dr. Nica's opinion because he did not have "program knowledge" and asserted that his opinions were not supported by the record. (*Id*.)

As an initial matter, the Court finds that the record contains evidence that is consistent with and supportive of the opinions provided by Dr. Rush and Dr. Nica. Their treatment notes consistently report a sad mood, a worried affect, a visibly distressed appearance, frequent crying episodes, and apprehensive behavior. (R. at 288, 290, 293, 365, 366, 418, 429.)

13

Despite the ALJ's assertion that Plaintiff had significant "improvement" of her symptoms, Dr. Rush wrote a letter dated January 9, 2017, in which she indicated that the mental health questionnaire she completed on July 18, 2014 had only few changes, described Plaintiff as even "less driven," and reported that Plaintiff was still impaired by her anxiety and unstable mood. (R. at 463.) Dr. Nica and Dr. Rush's opinions are also consistent with the consultative examiner's findings, Dr. Spindler, who does have "program knowledge," as he was hired by Social Security to personally examine Plaintiff. Dr. Spindler opined that it was unlikely that Plaintiff could sustain a work pace and maintain a level of attention and concentration that would be sufficient for most jobs, that it was unlikely that she would respond appropriately to supervision and coworkers, and finally, that Plaintiff would unlikely respond appropriately to routine work pressures. (R. at 414-415.) Here, not only do the treatment notes support Drs. Rush and Nica's opinions, but the only other medical source of record who had the opportunity to observe and examine Plaintiff agree that greater mental restrictions are necessary. The ALJ failed to articulate good reasons for discounting the opinions of Dr. Rush and Dr. Nica, who had been treating Plaintiff for years, in favor of a single state agency consultant.[2] *See* 20 C.F.R. § 404.1527(c)(2) (noting if treating physician's opinion is "well-supported by medically acceptable

---

[2] The ALJ found that the state agency opinions were entitled to "great weight" because "they were supported with an explanation." (R. at 21.) The Court notes, however, the two state agency opinions differ drastically between the findings at the initial level and the reconsideration level. The ALJ did not differentiate between the opinions at either level and merely gave "great" weight to the state agency opinions. The Court has no way of knowing which set of findings the ALJ credited. Even if the ALJ had been crediting the findings at reconsideration level, it is then unclear if the ALJ was aware of the immense discrepancy between the two sets of opinions. Here, the ALJ's complete failure to address these inconsistencies makes her reliance on the state agency opinions impossible to uphold. *See* SSR 96-8p (noting that ALJ must explain how any material inconsistencies or ambiguities in evidence in case record were considered and resolved).

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.")

The other reason articulated by the ALJ—that Drs. Rush and Nica lack "program knowledge"—is confounding. A medical source's familiarity with disability standards may be a factor to consider in evaluating his or her opinion. 20 C.F.R § 404.4527(c)(6) (providing that the agency may consider the amount of understanding of disability programs in weighing an opinion). Here, however, the ALJ applied this factor inconsistently. Dr. Spindler has "program knowledge," but the ALJ determined that his opinions were entitled to only "little" weight.

The ALJ's conclusion that Dr. Rush's opinions are "skewed" is perplexing. The Court cannot discern the ALJ's meaning in this regard. She provided no explanation for why or how Dr. Rush's opinions are "skewed." As such, the Court will not uphold this vague statement as a "good reason" to reject Plaintiff's treating physicians' opinion. *See Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011) ("[T]he court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.") (quoting *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1080 (E.D. Wisc. 2009)) (internal quotation marks omitted). *Samona v. Comm'r v. Soc. Sec.*, No. 2:15-cv-11713, 2016 WL 3951420, at *7 (E.D. Mich. June 24, 2016) (holding that "cursory" or irrelevant analysis fails to provide a logical bridge between evidence and conclusion was insufficient); *Weaver v. Comm'r of Soc. Sec.*, 2017 WL 1212995, at *11 (E.D. Mich., 2017) (same).

Here, the only other mental health specialist who personally examine Plaintiff provided an opinion consistent with both treating sources. The Court again notes that that Dr. Spinder,

being hired by Social Security, has "program knowledge," a factor that both the ALJ and the Commissioner seemingly favor.

The purported-good reasons offered by the ALJ are not supported by substantial evidence. Here, the record contains multiple opinions from multiple treating-source providers. Those opinions are consistent with one another and with the only other opinion evidence of record who had the opportunity to personally examine Plaintiff. The record is overwhelmingly one-sided in favor of those opinions, yet the ALJ's determination of Plaintiff's mental residual functional capacity fails to account for any of them in favor of a one-off outlier state agency opinion. *See Wilson*, 378 F.3d at 545 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (6th Cir. 2004)).

## V. DISPOSITION

From a review of the record as a whole, the Court concludes that substantial evidence does not support the ALJ's decision denying benefits. For the foregoing reasons, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

*/s/ Algenon L. Marbley*
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2019**